UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| GRETCHEN W. CARLSON, M.D.,<br><br>Plaintiff,<br><br>v.<br><br>WASHINGTON STATE DEPARTMENT OF HEALTH; MARY C. SELECKY, Secretary, Department of Health, in her official capacity; and TIM SLAVIN, Investigator, Department of Health, in his official and in his individual capacity,<br><br>Defendants. | NO. 07-CV-00681-JLR<br><br>MOTION FOR PROTECTIVE ORDER IMPOSING STAY OF DISCOVERY AND SUBJOINED MEMORANDUM<br><br>ORAL ARGUMENT REQUESTED<br><br>NOTE ON MOTION CALENDAR: AUGUST 17, 2007 |

I.   MOTION

COMES NOW the defendants, by and through their attorney Geoffrey W. Hymans, Assistant Attorney General, and moves the Court for an order prohibiting the plaintiff and her counsel from conducting any discovery of the Secretary of Health, the Department of Health (DOH) or its employees, or the Medical Quality Assurance Commission (MQAC) or its members until after MQAC has concluded its ongoing

MOTION FOR PROTECTIVE ORDER AND SUBJOINED MEMORANDUM
ORAL ARGUMENT REQUESTED

1

ATTORNEY GENERAL OF WASHINGTON
Agriculture & Health Division
7141 Cleanwater Drive SW
PO Box 40109
Olympia, WA 98504-0109
(360) 586-6500

investigation of the plaintiff and determined whether or not to issue a Statement of Charges under the Uniform Disciplinary Act (UDA) for Health Professionals, Chapter 18.130 RCW. This motion is supported by the subjoined memorandum and the Declarations of Tim Slavin and Cabell Tennis filed herewith.

## II.  MEMORANDUM

### A. Facts:

On February 1, 2007, the Department of Health received an anonymous complaint against psychiatrist Gretchen W. Carlson.[1] The complaint stated:

> It is a fact that Dr. Gretchen Carlson is a psychiatrist. It is a fact that [Patient A] was and is a patient of Dr. Carlson. [Patient A] lives in Bellevue. It is a fact that Dr. Carlson and [Patient A] are having a sexual relationship. It is a fact that [Patient A] is staying with Dr. Carlson in her residence in Kirkland.

Department of Health staff serves as investigators for the Medical Quality Assurance Commission, the state agency which is the disciplining authority for physicians in Washington, including psychiatrists.[2] Following authorization of an investigation, DOH Investigator Tim Slavin sent a letter to Gretchen W. Carlson on March 7, 2007.[3] The letter alerted Dr. Carlson that a complaint had been filed against her, enclosed a copy of the complaint, and requested that Dr. Carlson provide a statement responding to the complaint along with a copy of the medical records for the patient in question. The letter cited RCW 18.130.180(8) and RCW 70.02.050(2)(a) as the statutory authority for the request, and asked that the response be sent within 14 days.

---

[1] A copy of the complaint is attached as Exhibit A to the Declaration of Tim Slavin, filed in support of this motion.
[2] *See* Revised Code of Washington (RCW) 18.130.040(2)(b)(ix); 18.71.010(1); RCW 18.71.0191.
[3] A copy of the letter is attached as Exhibit B to the Declaration of Tim Slavin, filed in support of this motion.

MOTION FOR PROTECTIVE ORDER AND SUBJOINED MEMORANDUM
ORAL ARGUMENT REQUESTED

2

ATTORNEY GENERAL OF WASHINGTON
Agriculture & Health Division
7141 Cleanwater Drive SW
PO Box 40109
Olympia, WA 98504-0109
(360) 586-6500

On March 14, 2007, a copy of what appears to be medical records for Patient A was received by DOH.[4] On March 20, 2007, DOH Investigator Tim Slavin left a phone message for Dr. Carlson informing her that he had received a copy of the medical records but had not received her statement.[5] On March 21, 2007, DOH received a faxed Notice of Appearance from attorney Kenneth S. Kagan.

On March 22, 2007, Tim Slavin and Kenneth Kagan spoke by phone.[6] Kagan told Slavin that Dr. Carlson did not send DOH a copy of the patient's medical records, and he requested that he be able to review the submitted records to determine if they were authentic.[7] Slavin told Kagan that he could not release the records, but that if Dr. Carlson sent a copy of the records as requested by the 14-day letter the Department could compare the records to determine if there were discrepancies. Kagan stated that he believed the records to be forged or stolen, and he requested an additional 14 days to confer with his client and respond to DOH's letter. Slavin agreed to the request.[8]

On March 26, 2007, Kagan sent Slavin a letter demanding the return of the medical records "without making or keeping a copy set."[9] The letter did not provide Dr. Carlson's statement in response to the complaint, as requested by the 14-day letter. Kagan also sent a follow-up letter claiming that Dr. Carlson was being stalked and asking DOH to reveal the "identity of the person who sent you the purported chart notes."[10]

---

[4] See Declaration of Tim Slavin, paragraph 5.
[5] See Declaration of Tim Slavin, paragraph 8.
[6] Id.
[7] Id.
[8] Id.
[9] A copy of the letter is attached as Exhibit C to the Declaration of Tim Slavin, filed in support of this motion.
[10] A copy of the letter is attached as Exhibit D to the Declaration of Tim Slavin, filed in support of this motion.

MOTION FOR PROTECTIVE ORDER AND SUBJOINED MEMORANDUM
ORAL ARGUMENT REQUESTED

3

ATTORNEY GENERAL OF WASHINGTON
Agriculture & Health Division
7141 Cleanwater Drive SW
PO Box 40109
Olympia, WA 98504-0109
(360) 586-6500

On March 29, 2007, Slavin transmitted by e-mail a letter written by DOH Staff Attorney Mike Bahn.[11] The e-mail stated:

> Given that we are still in the investigation phase of this matter, Mr. Slavin and I will compare the two sets to determine if there are discrepancies between them. We will also determine whether or not the complaint was made in good faith and whether the records were altered or fabricated. Should there be differences, we will take reasonable and legitimate steps to sort out the reasons for the differences. If need be you will be contacted to discuss any differences and provided pertinent portions of the records for Dr. Carlson's comment.

On April 5, 2007, Kagan replied to the e-mail with another letter. This four-page letter stated that Kagan found the Department's stance on the records issue "quite remarkable, not to mention repugnant."[12] The letter accused DOH of being "complicit with" a patient allegedly stalking Dr. Carlson. The letter included legal assertions regarding MQAC's authorization of the investigation, and stated that "[i]f it turns out that Mr. Slavin solicited the records from someone other than Dr. Carlson, which at this point seems unthinkable, I cannot even imagine what the consequences of that revelation might be." The letter "renew[ed]" Kagan's "demand that the Department return the records in its possession" and warned "I will take whatever legal action is appropriate to enforce Dr. Carlson's rights in this regard."

The Department responded to this letter by sending a "three-day letter" on April 10, 2007, requiring compliance with the requests contained in the Department's March 7, 2007, letter.[13] Dr. Carlson responded by filing the complaint in this action on April 16, 2007, (less than six weeks after receiving the initial notice of the investigation). In

---

[11] A copy of the e-mail is attached as Exhibit E to the Declaration of Tim Slavin, filed in support of this motion.
[12] A copy of the letter is attached as Exhibit F to the Declaration of Tim Slavin, filed in support of this motion.
[13] A copy of the letter is attached as Exhibit G to the Declaration of Tim Slavin, filed in support of this motion.

MOTION FOR PROTECTIVE ORDER AND SUBJOINED MEMORANDUM
ORAL ARGUMENT REQUESTED

4

ATTORNEY GENERAL OF WASHINGTON
Agriculture & Health Division
7141 Cleanwater Drive SW
PO Box 40109
Olympia, WA 98504-0109
(360) 586-6500

his letter accompanying the complaint, Kagan stated "[i]t is further my view that until the Department's entitlement to its investigation and the records it seeks is adjudicated, any effort on the part of the Department to seek a charge against her that she failed to cooperate, in violation of the statute, would be undertaken in bad faith and in retaliation for her assertion of her state and federal rights."[14]

After filing the complaint, the parties held their FRCP 26(f) conference, and filed their joint 26(f) conference report. As indicated in that report, the plaintiff's counsel stated that he would conduct discovery to determine the identity of any reviewing MQAC members, and would seek to depose those members and department staff.

The investigation of the complaint against Dr. Carlson is ongoing, and has not been halted by the filing of the complaint in this action.[15] Counsel for the Defendants has stated that he will voluntarily disclose the identity of the reviewing MQAC member(s) and will not oppose depositions of department staff or the MQAC member(s) <u>after</u> the investigation has concluded and MQAC has made a determination of whether a Statement of Charges will be issued against Dr. Carlson for violations of Washington State's Uniform Disciplinary Act (RCW Chapter 18.130).

**B.    Analysis**

    1.    FRCP 26(c)

The Uniform Disciplinary Act (UDA) was enacted to "assure the public of the adequacy of professional competence and conduct in the healing arts." RCW 18.130.010. Engaging in a sexual relationship with a patient not only violates psychiatric ethics,[16] but explicitly violates Washington State Administrative Code

---

[14] A copy of the letter is attached as Exhibit H to the Declaration of Tim Slavin, filed in support of this motion.
[15] See Declaration of Tim Slavin, paragraph 15.
[16] See, e.g. The Principles of Medical Ethics with Annotations Especially Applicable to Psychiatry, produced by the American Psychiatric Association, Annotation to Section 2, page 4 ("Sexual activity with a

MOTION FOR PROTECTIVE ORDER AND SUBJOINED MEMORANDUM
ORAL ARGUMENT REQUESTED

5

ATTORNEY GENERAL OF WASHINGTON
Agriculture & Health Division
7141 Clearwater Drive SW
PO Box 40109
Olympia, WA 98504-0109
(360) 586-6500

sections regulating physicians. WAC 246-919-630. Violations of these WAC sections constitute unprofessional conduct under the UDA. *See* RCW 18.130.180(7) ("violation of any state . . . administrative rule regulating the profession in question"); *see also* RCW 18.130.180(24) ("abuse of a client or patient or sexual contact with a client or patient"). The MQAC is the disciplining authority for physicians in Washington, responsible for authorizing and overseeing investigations of unprofessional conduct, and for issuing Statements of Charges against health professionals. See RCW 18.130.040(2)(b)(ix); 18.130.050; 18.130.090; 18.71.010(1).

Carlson seeks to engage in discovery of the disciplining authority and its investigators <u>while an investigation is ongoing</u>. As indicated in the FRCP 26(f) Joint Report, the defendants do not object to Carlson having reasonable discovery of MQAC members or of Department of Health staff serving the commission,[17] the defendants merely want to postpone such discovery until after the active investigation has concluded and MQAC has made a decision whether or not to issue a Statement of Charges against Dr. Carlson.

The standard for granting a protective order under FRCP 26(c) grants broad discretion[18] to the trial court:

---

current or former patient is unethical."); available at http://www.psych.org/psych_pract/ethics/ethics.cfm. The court may take judicial notice under Fed. R. Evid. 201 of the fact that the APA ethical code contains the above-quoted statement as that is a fact capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

[17] The defendants reserve the right to object to discovery of all matters that are privileged, constitute work product, reflect the deliberative process of the agency, or other fall into other applicable discovery privileges and exemptions. The Department anticipates having further discussions with opposing counsel regarding the nature of the discovery plaintiff seeks and may seek additional relief from the Court at a future date, if the discovery would intrude on privileged matters. However, at this time the Department only seeks to postpone plaintiff's discovery to allow the Department to conclude its investigation unpressured and unimpeded and to allow the MQAC to make it's statutorily mandated charging decision without interference.

[18] "Subsection (c) underscores the extensive control that district courts have over the discovery process, authorizing courts to make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. Thus . . . a court may be as inventive as the necessities of a particular case require in order to achieve the benign purposes of the rule." *U.S. v. Columbia Broadcasting System, Inc.*, 666 F.2d 364, 369 (9th Cir. 1982)(internal quotations and citations omitted).

MOTION FOR PROTECTIVE ORDER AND SUBJOINED MEMORANDUM
ORAL ARGUMENT REQUESTED

6

ATTORNEY GENERAL OF WASHINGTON
Agriculture & Health Division
7141 Cleanwater Drive SW
PO Box 40109
Olympia, WA 98504-0109
(360) 586-6500

> [F]or good cause shown, the court in which the action is pending . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
> (1) that the disclosure or discovery not be had;
>
> (2) that the disclosure or discovery may be had only on specified terms and conditions, including a designation of the time or place;

FRCP 26(c).

> [T]he sole criterion for determining the validity of a protective order is the statutory requirement of "good cause." "Good cause" is a well established legal phrase. Although difficult to define in absolute terms, it generally signifies a sound basis or legitimate need to take judicial action. In a different context, this court has identified four factors for ascertaining the existence of good cause which include: [1] the severity and the likelihood of the perceived harm; [2] the precision with which the order is drawn; [3] the availability of a less onerous alternative; and [4] the duration of the order.

*In re Alexander Grant & Co. Litigation*, 820 F.2d 352, 355-356 (C.A.11 (Fla.), 1987).

The severity of the harm in the present matter is significant: it is the interference with an ongoing investigation into serious allegations of professional misconduct by a physician. The order (a draft of which has been submitted with this pleading) can be drawn precisely, and the precision of the order is specifically linked to its duration: the order will only be in effect until the active investigation is completed and the MQAC determines whether or not to issue a Statement of Charges. Finally, there is <u>no</u> less onerous alternative. Even allowing limited discovery of the investigator during the investigation significantly compromises the investigation. Every question regarding the investigation asked during a deposition or included in interrogatories has the potential to "tip the hand" of the investigators. And deposing the reviewing members of MQAC <u>before</u> they issue a decision on a statement of charges serves only as a device to influence their charging decision.

MOTION FOR PROTECTIVE ORDER AND SUBJOINED MEMORANDUM
ORAL ARGUMENT REQUESTED

7

ATTORNEY GENERAL OF WASHINGTON
Agriculture & Health Division
7141 Cleanwater Drive SW
PO Box 40109
Olympia, WA 98504-0109
(360) 586-6500

Plaintiff will suffer no harm, and therefore is not prejudiced in the slightest, by requiring her to wait until the investigation is concluded before they undertake discovery. The basic time for a Department investigation is 170 days. WAC 246-14-050(2). While limited extensions of that basic time period are possible, *see, e.g.*, WAC 246-14-070 (30 or 60 day extensions), in no event is the investigation likely to go beyond 260 days (170+30+60). This is less than a year for investigation of serious allegations of wrongdoing which may involve complex investigatory tasks, including the issuance of subpoenas for records and contact with multiple witnesses.[19]

The plaintiffs lose <u>nothing</u> by waiting. All of the information contained in the case file will be maintained during the course of the investigation, and all nonprivileged materials will be voluntarily turned over to the plaintiff's counsel. The defendants anticipate that all the witnesses regarding the decision to authorize the investigation – the critical facts that underlie <u>all</u> plaintiffs' claims – will be available for discovery when the investigation concludes. Further, those facts won't change while the investigation proceeds and aren't likely to be forgotten in less than a year's time.

Rule 26(c) turns on the requirements of justice. Justice requires that investigations into serious allegations of unprofessional conduct (such as a psychiatrist having a sexual relationship with a patient) not be interfered with by discovery requests, whether in the form in interrogatories, depositions, or requests for production or admissions.[20] Questions asked in interrogatories or a deposition could reveal investigatory targets and tactics and allow the subject of the investigation to contact and

---

[19] The Department cannot be more specific regarding the requirements of the current investigation or this pleading would serve to disclose the very information the Department seeks to maintain as confidential until the conclusion of the investigation.

[20] The State of Washington has, as a matter of public policy, recognized the important public interest in keeping confidential the records of ongoing investigations by making such records exempt from the state Public Records Act. *See* RCW 42.56.240. "[S]tate agencies vested with the responsibility to discipline members of any profession" are specifically covered by the exemption, and Washington's courts have recognized the health departments as law enforcement agencies for this purpose. *Tacoma News, Inc. v. Tacoma-Pierce County Health Dept.*, 55 Wn. App. 515, 778 P.2d 1066 (1989), *review denied* 113 Wn.2d 1037, 785 P.2d 825.

MOTION FOR PROTECTIVE ORDER AND SUBJOINED MEMORANDUM
ORAL ARGUMENT REQUESTED

8

ATTORNEY GENERAL OF WASHINGTON
Agriculture & Health Division
7141 Cleanwater Drive SW
PO Box 40109
Olympia, WA 98504-0109
(360) 586-6500

pressure identified third-parties, destroy evidence which the subject discovers that the investigator is seeking, or glean tactical information which could be used to shape the subject's own responses to the investigation. Justice is hardly served by allowing such harassment during the investigative process, particularly when such discovery is freely had at the conclusion of the investigation.

The balance of the interests involved weighs heavily in favor of preventing discovery until after the investigation has concluded. On one side is the protection of the ongoing investigation into serious allegations of professional misconduct. On the other is the desire of a plaintiff in a suit filed less then six weeks after the commencement of an investigation against her to obtain facts that will still be readily available when the investigation has concluded.[21]

### 2.    Law Enforcement Investigatory Privilege

In addition to FRCP 26(c) favoring entry of the defendant's proposed protective order, the law enforcement investigatory privilege supports entry of the order. The law enforcement investigatory privilege is a federal common law privilege which insulates ongoing investigations from discovery.

> To sustain the claim, three requirements must be met: (1) there must be a formal claim of privilege by the head of the department having control over the requested information; (2) assertion of the privilege must be based on actual personal consideration by that official; and (3) the information for which the privilege is claimed must be specified, with an explanation why it properly falls within the scope of the privilege.

*In re Sealed Case*, 856 F.2d 268, 271 (C.A.D.C., 1988)

---

[21] The plaintiff has already filed suit, and so faces no statute of limitations problem. An appropriate case schedule can be set that will accommodate the need to postpone plaintiff's discovery until the conclusion of the ongoing investigation, or a stay of the action could be entered until the investigation concludes. Defendants are willing to work with the plaintiff on an agreed case schedule or stay. Further, the defendants have already given reassurances regarding any potential spoliation of evidence, but if the plaintiff has concerns that could be mollified by an anti-spoliation order from the Court; the defendants are willing to work with the plaintiff to develop a joint anti-spoliation order for presentation.

MOTION FOR PROTECTIVE ORDER AND SUBJOINED MEMORANDUM
ORAL ARGUMENT REQUESTED

9

ATTORNEY GENERAL OF WASHINGTON
Agriculture & Health Division
7141 Cleanwater Drive SW
PO Box 40109
Olympia, WA 98504-0109
(360) 586-6500

The Declaration of Cabell Tennis, chairperson of the Medical Quality Assurance Commission (MQAC), meets all these requirements. Chairperson Tennis is the Chair of MQAC, the disciplining authority for physicians and the agency for which the investigation is being conducted. Chair Tennis has actually reviewed the investigative file, and the information for which the privilege is claimed (all questions relating to the ongoing investigation or the active investigative file) is specified, with specific reasons set forth explaining why the information should be privileged.

As in *In re Sealed Case*, where the Securities and Exchange Commission (SEC) successfully claimed the investigatory privilege for an ongoing investigation, the MQAC and the Department staff serving MQAC should not be burdened by discovery while the investigation is ongoing. The interests protected by the investigatory privilege are even greater than in *In re Sealed Case*, since the SEC was only investigating financial wrongdoing, while MQAC investigates professional misconduct involving significant potential harm to vulnerable populations (such as mental health patients).

The elements of the privilege being established, the court must still balance the public interest in protecting ongoing investigations against the needs of civil rights plaintiffs. *Jones v. City of Indianapolis*, 216 F.R.D. 440, 444 (S.D. Ind., 2003). Federal courts have identified ten factors for consideration which "although not exhaustive, are useful in making this determination." *Tuite v. Henry*, 181 F.R.D. 175, 177 (D.D.C., 1998).[22] The court has considerable leeway in weighing these factors in undertaking balancing. *Jones*, 216 F.R.D. at 444.

---

[22] These factors are:
(1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information;
(2) the impact upon persons who have given information of having their identities disclosed;
(3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure;
(4) whether the information sought is factual data or evaluative summary;

MOTION FOR PROTECTIVE ORDER AND SUBJOINED MEMORANDUM
ORAL ARGUMENT REQUESTED

10

ATTORNEY GENERAL OF WASHINGTON
Agriculture & Health Division
7141 Cleanwater Drive SW
PO Box 40109
Olympia, WA 98504-0109
(360) 586-6500

The factors that apply to this situation all balance in favor of the Department of Health. Discovery in the current case might reveal witnesses, discouraging citizens from giving the MQAC information and potentially subjecting these witnesses to harassment. The plaintiff is unlikely to be a defendant in a criminal proceeding. The investigation is ongoing. The facts presented in the declarations and exhibits accompanying this motion speak for themselves and would support the Court's determination that plaintiff brought this suit in an attempt to derail the ongoing investigation.[23]

Finally, while some information sought by the plaintiff may not be available from another source and may be important to the plaintiff's case, the critical factor is that the Department is <u>not</u> seeking to permanently deny plaintiff discovery. The Department merely seeks a protective order and stay of plaintiff's discovery so that the investigation may conclude and a charging decision can be made without revealing investigatory and legal strategy so that witnesses can be free from potential harassment until the facts have been gathered.

The balance weighs in favor of the Department of Health, which represents the people of Washington State in investigating conduct the Washington State legislature deemed unprofessional. These are <u>health care professions</u>, in which the potential public harm from unprofessional conduct (particularly conduct such as a psychiatrist having

---

(5) whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question;
(6) whether the investigation has been completed;
(7) whether any interdepartmental disciplinary proceedings have arisen or may arise from the investigation;
(8) whether the plaintiff's suit is nonfrivolous and brought in good faith;
(9) whether the information sought is available through other discovery or from other sources; and
(10) the importance of the information sought to the plaintiff's case.

*Jones v. City of Indianapolis*, 216 F.R.D. at 444 (S.D.Ind., 2003) (citing *Tuite*, 181 F.R.D. at 177, and *Frankenhauser v. Rizzo*, 59 F.R.D. 339, 344 (E.D.PA., 1973)
[23] If the Court made such a determination Defendants believe that determination would also support a finding that the Plaintiff's suit was brought in "bad faith."

MOTION FOR PROTECTIVE ORDER AND SUBJOINED MEMORANDUM
ORAL ARGUMENT REQUESTED

11

ATTORNEY GENERAL OF WASHINGTON
Agriculture & Health Division
7141 Cleanwater Drive SW
PO Box 40109
Olympia, WA 98504-0109
(360) 586-6500

sex with a patient) is significant. For these reasons the Court is requested to rule that the law enforcement investigatory privilege applies to bar plaintiff from conducting discovery in this matter until the investigation has concluded and the MQAC has decided whether to issue a Statement of Charges against Dr. Carlson.

**C.  Request for Relief**

Both the law enforcement investigatory privilege and the protective order balancing under FRCP 26(c) favor the entry to the Department's proposed protective order. The order should stay discovery by the plaintiff and bar plaintiff from conducting discovery until the active investigation of Dr. Carlson has concluded and MQAC has decided whether to issue a statement of charges against Dr. Carlson. Defendants respectfully request that the Court sign and enter the accompanying proposed Protective Order & Stay.

Submitted to the Court this 30th day of July, 2007.

RESPECTFULLY SUBMITTED,

GEOFFREY W. HYMANS, WSBA#26210
Assistant Attorney General
Attorney for State of Washington, Department of Health, Mary C. Selecky, and Tim Slavin
MOTION FOR PROTECTIVE ORDER AND SUBJOINED MEMORANDUM
ORAL ARGUMENT REQUESTED

12

ATTORNEY GENERAL OF WASHINGTON
Agriculture & Health Division
7141 Cleanwater Drive SW
PO Box 40109
Olympia, WA 98504-0109
(360) 586-6500